# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

ADIJAT EDWARDS,

                Plaintiff,

v.

UNITED STATES OF AMERICA,

                Defendant.

Civil No. 13-2336 (JRT/JJK)

**MEMORANDUM OPINION
AND ORDER ON
DEFENDANT'S MOTION
TO DISMISS**

---

Graham Ojala-Barbour, **OJALA-BARBOUR LAW FIRM**, 821 Raymond Avenue, Suite 320, St. Paul, MN  55114; and Richard L. Breitman, **BREITMAN IMMIGRATION LAW FIRM**, 2901 Metro Drive, Suite 501, Minneapolis, MN  55425, for plaintiff.

David W. Fuller, Assistant United States Attorney, **UNITED STATES ATTORNEY'S OFFICE**, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN  55415, for defendant United States of America.

This case arises out of events that occurred in the course of Plaintiff Adijat Edwards' arrival at the Minneapolis-St. Paul International Airport from Nigeria.  She was detained by immigration officials upon her arrival and alleges that the officials confiscated $4,000 worth of her jewelry and that several days later, immigration officers forced her to withdraw $1,200 in cash from a bank with her bank card, explaining that this was required in order to pay for her flight back to Nigeria as part of her expedited removal from the United States.

She brings this action under the Federal Tort Claims Act ("FTCA"), alleging claims for both conversion and negligence.  Defendant United States ("the government")

moves to dismiss for lack of jurisdiction, arguing that her claims fall within exceptions to the government's waiver of its sovereign immunity under the FTCA.  The Court will deny the government's motion to dismiss with regard to Edwards' claim for conversion of her $1,200 in cash, but grant the government's motion in all other respects.

## BACKGROUND

### I.    COMPLAINT

Edwards alleges that she landed at the Minneapolis-St. Paul Airport from Nigeria on January 31, 2011.  (Compl. ¶ 7, Aug. 26, 2013, Docket No. 1.)  She alleges that upon her arrival, Immigration and Customs Enforcement ("ICE") and U.S. Customs and Border Patrol ("CBP") officers detained her and held her in custody.  (*Id.* ¶ 8.)  Edwards alleges that CBP and ICE officers "separated [her] from her possessions at the time of her detention," including jewelry valued at $4,000.  (*Id.* ¶¶ 9-10.)

Later, on the morning of February 8, 2011, Edwards alleges that an ICE officer named Ken, accompanied by another officer, took Edwards "to the US Bank at [the] Minneapolis[–]St. Paul International Airport" and requested that she withdraw $1,200 in cash using her bank card, which he claimed was necessary to purchase an airline ticket for her expedited removal from the United States.  (*Id.* ¶¶ 11-14.)  Ken took Edwards to the Delta Airlines ticket counter at the airport and asked her to purchase a ticket for Edwards' expedited removal, but the ticket agent advised him that a ticket was not necessary for a person's expedited removal from the United States.   (*Id.* ¶¶ 15-16.) Edwards alleges that Ken then kept the $1,200 in cash and that after she requested that he

return it to her, he told her that the money would be returned to her at the time of her removal from the United States or immediately before her removal. (*Id.* ¶¶ 17-19.)

Edwards alleges that she was then returned to the ICE offices in the Metro Office Park in Bloomington, MN. (*Id.* ¶ 20.) She alleges that later that same day, February 8, 2011, another officer whose name was possibly "Zanter" or "Vanter," accompanied Edwards to the airport. (*Id.* ¶ 21.) Edwards asked him when her jewelry and $1,200 cash would be returned to her and he said that he did not know. (*Id.* ¶¶ 22-23.) Edwards alleges that neither the $1,200 cash nor the jewelry were or ever have been returned to her. (*Id.* ¶ 24.)

## II.    ADMINISTRATIVE CLAIM

Defendant United States presents evidence of an administrative claim that Edwards made on the basis of these events. (Ex. to Mem. in Support of Mot. to Dismiss, Mar. 3, 2014, Docket No. 16.) The claim is in the form of a letter dated February 6, 2013 from Edwards' counsel to the ICE Office of Principal Legal Advisor, the Office of General Counsel, the Department of Homeland Security, and the Office of the Chief Counsel for ICE. (*Id.*) The letter includes a summary of the events at issue here listed in a manner that substantially mirrors that in the complaint. (*Id.*) The letter also states that "[t]he date of events resulting in the conversion of property, cash and jewelry is February 8, 2011. It occurred at the offices of ICE in Bloomington, Minnesota at 7800 Metro Parkway, 2901 Metro Drive, and at the Minneapolis, St. Paul International Airport" and that "[p]roperty [d]amage in this matter involves the theft of $1,200.00 in cash and jewelry valued at approximately $4,000.00." (*Id.*)

### III.   THIS ACTION

Edwards now brings this action against the United States under the Federal Tort Claims Act.  She alleges in Count I a claim for conversion under the FTCA, alleging that the officers' actions deprived her of her cash and jewelry and their refusal to return either amounted to conversion under Minnesota law and that the United States is liable for their actions under the FTCA.  (*Id.* ¶¶ 27-28.)  She alleges in Count II a claim for negligence under the FTCA, alleging that ICE had a duty to "protect, safeguard, and return" her property and that it breached that duty.  (*Id.* ¶¶ 30-32.)  She seeks compensatory damages and attorneys' fees.  (*Id.* at 5.)

Defendant United States moves to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.  It argues that each of her claims fail for distinct reasons.  The United States argues that her conversion claim fails as a matter of law because the "detention of goods" exception to the United States' liability under the FTCA includes conversion actions and thus the United States has not waived sovereign liability with regard to such a claim.  It argues that her negligence claim fails, both because it likely falls under the "detention of goods" exception, and because she failed to assert a claim for negligence in her administrative claim.  Alternatively, it argues that her negligence claim fails because it is barred by the FTCA's "discretionary function" exception, *see* 28 U.S.C. § 2680(a).  The Court concludes that Edwards' conversion claim for the jewelry is barred by the detention of goods exception, but that her claim for the withdrawn cash is not.  With regard to her negligence claim, the Court concludes that Edwards did not adequately present facts supporting this claim in her administrative

claim letter and thus did not properly exhaust the claim. The Court will therefore grant the government's motion for dismissal except with respect to Edwards' conversion claim for the withdrawn cash.

## ANALYSIS

## I.    STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(1) challenges the Court's subject matter jurisdiction and requires the Court to examine whether it has authority to decide the claims. *Uland v. City of Winsted,* 570 F. Supp. 2d 1114, 1117 (D. Minn. 2008). There are two types of subject-matter-jurisdiction challenges under Rule 12(b)(1): "facial" attacks and "factual" attacks. *See, e.g., Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). A facial attack challenges subject-matter jurisdiction based solely on the allegations appearing on the face of the complaint. *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). "In ruling on such a motion, a court must afford the non-moving party the same protections it would be entitled to under Rule 12(b)(6)." *Gilmore v. Nw. Airlines, Inc.*, 504 F. Supp. 2d 649, 653 (D. Minn. 2007). "By contrast, a factual attack depends upon the resolution of facts in order to determine whether subject-matter jurisdiction exists; a court may rely upon matters outside the pleadings when considering such an attack, and the non-moving party does not receive the benefit of Rule 12(b)(6)'s safeguards." *Id.*

Here, the government does not challenge the adequacy of the facts underlying jurisdiction, but rather whether the facts in the complaint, accepted as true, legally amount to a proper claim under the FTCA.[1]  Thus, "[b]ecause the government limits its jurisdictional attack to Jones's complaint, this is a facial challenge to subject-matter jurisdiction." *Jones v. United States*, 727 F.3d 844, 846 (8th Cir. 2013).  The Court therefore considers Edwards' complaint under the rules governing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *See id.*

In reviewing a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), the Court accepts all facts alleged in the complaint as true, and draws all reasonable inferences from the facts in favor of the nonmoving party, to determine if the complaint states a "'claim to relief that is plausible on its face.'"  *Magee v. Trs. of Hamline Univ., Minn.*, 747 F.3d 532, 534-35 (8th Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  To survive a motion to dismiss, a complaint must provide more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content

---

[1] The government points to only one document not attached to Edwards' pleadings: the letter Edwards submitted as part of her administrative claim.  The Court, however, concludes that the claim letter is "embraced by the pleadings" and therefore properly considered in a facial attack, *see Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012) ("[D]ocuments necessarily embraced by the complaint are not matters outside the pleading" and include "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." (internal quotations omitted)), because Edwards references the claim letter in her complaint (*see* Compl. ¶ 3).

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## II.     FTCA FRAMEWORK

The Federal Tort Claims Act is a limited waiver of sovereign immunity which makes the federal government liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment. *United States v. Orleans*, 425 U.S. 807, 813 (1976); *see also* 28 U.S.C. § 2674. The purpose of this waiver is "'to compensate the victims of negligence in the conduct of governmental activities in circumstances like those in which a private person would be liable and not to leave just treatment to the caprice and legislative burden of individual private laws.'" *Bacon v. United States*, 810 F.2d 827, 828 (8th Cir. 1987) (quoting *Indian Towing Co. v. United States*, 350 U.S. 61, 68-69 (1955)).

There are several exceptions to this waiver, however, two of which are at issue here. First, the waiver does not extend to claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The waiver also does not extend to "[a]ny claim arising in respect of . . . the detention of any goods, merchandise, or other property by any officer of customs or excise or any other law enforcement officer." 28 U.S.C. § 2680(c). In applying these exceptions, courts must strictly construe all waivers of the federal government's sovereign immunity, and must resolve all ambiguities in favor of the sovereign. *United States v. Nordic Vill. Inc.*, 503 U.S. 30, 34 (1992).

Furthermore, the FTCA requires that an administrative tort claim be submitted to the applicable federal agency within two years after the claim accrues.   28 U.S.C. § 2401(b).   Before the United States can be sued under the FTCA, "the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency." 28 U.S.C. § 2675(a).

## III.   CONVERSION

Count I of Edwards' complaint alleges a claim for conversion – that the ICE officers deprived Edwards of her cash and jewelry and failed to return them to her. [2]

### A.   Detention of Goods Exception

The government argues that the Court lacks jurisdiction over Edwards' conversion claim because the government is immune from suit for "detention of goods" under 28 U.S.C. § 2680(c).   The Supreme Court has interpreted this exception to mean that the United States is immune under the detention of goods exception from liability "for injuries caused by the negligence of customs officials in handling property in their possession." *Kosak v. United States*, 465 U.S. 848, 851 (1984) (holding that where

---

[2] Although not raised by the government, the Court notes that although intentional torts are typically not cognizable under the FTCA, *see* 28 U.S.C. § 2680(h), the Federal Court of Claims has established that conversion is not excluded from the act.  *See Husband v. United States*, 90 Fed. Cl. 29, 40 (Fed. Cl. 2009) ("[n]ot all intentional torts, however, are excluded. For example, trespass, conversion, and intentional infliction of emotional distress are not excluded. . . . The intentional tort of conversion is neither listed in the enumerated list of specific intentional torts excluded nor in the enumerated list of specific intentional torts not exempted when committed by a law enforcement officer. Therefore, a plaintiff may be able to bring an action under 28 U.S.C. § 2680(h) against law enforcement officers for the intentional tort of conversion." (internal citations omitted)).

petitioner's art was seized but ultimately returned damaged, petitioner was barred from bringing claim by detention of goods exception for amount of the damage). The Court concluded that the exception covers "any claim 'arising out of' the detention of goods, and includes a claim resulting from negligent handling or storage of detained property." *Kosak*, 465 U.S. at 854. The Eighth Circuit has extended *Kosak*'s reasoning beyond inspections with a search warrant to include detentions involved in routine customs inspections. *Goodman v. United States*, 987 F.2d 550, 551 (8th Cir. 1993).

The parties dispute whether this exception applies to permanent, as opposed to temporary, deprivations of property incident to a law enforcements detentions or inspection. Edwards argues that the detention of goods exception does not apply to intentional theft of property, because intentional theft deprives a person of property **permanently**, whereas "detention of goods" contemplates only a **temporary** deprivation. In support of her argument, Edwards points to a case from the Sixth Circuit which she argues indicates that the detention of goods exception is limited to the temporary taking of goods. In *Kurinsky v. United States*, 33 F.3d 594 (6th Cir. 1994), the court found it significant that "Congress chose to use the word 'detention' instead of the word 'seizure'" in this context and observed:

> A detention is generally associated with a period of temporary custody or delay. It carries no connotation of permanent custody, nor does it necessarily suggest an adversarial interest insofar as ownership is concerned. It is a term often associated with an ongoing investigation. A seizure, on the other hand, must be viewed as a term of art in this context.

*Id. at* 597 (concluding that, by using the word "detention" instead of "seizure," Congress indicated an intent to limit the exceptions in § 2860(c) to apply only to law enforcement

officers engaged in activities with a nexus to the collection of taxes or customs duties),

*abrogated on other grounds by Ali v. Fed. Bureau of Prisons*, 552 U.S. 214 (2008)

(interpreting detention of goods broadly, so as to apply to any kind of law enforcement

officers, regardless of whether, at time of their detention of such property, they were

enforcing customs or excise laws).[3]

Edwards cites to other cases that have referenced "detention" as indicating

temporary custody, although most of the cases she cites use that definition to include the

alleged conduct within the exemption rather than exclude it from the exemption.  For

example, she points to *Saint-Surin v. United States*, Civ. No. 11-3333, 2012 WL 5439141

(D. Minn. Oct. 22, 2012), in which the court held that a prison officer's taking and

keeping of a prisoner's blood pressure medication was a "detention of goods" under

§ 2680(c).  The court observed:

> Plaintiff's claim is based on the alleged "detention" of her property. This
> conclusion is supported by the plain meaning of the word "detention,"
> which is defined as "[c]ustody of property."  Black's Law Dictionary 514

---

[3] Edwards also points to a case from the Fifth Circuit, *Chapa v. U.S. Dep't of Justice*, 339
F.3d 388 (5th Cir. 2003), but it is not clear that this case supports her position.  There a prisoner
brought a FTCA claim for a box of his possessions that was lost in processing by the Bureau of
Prisons when he was transferred to a new location.  The court observed that "detention" is
"generally associated with a period of temporary custody or delay," and the statute did not use
the word "seizure," "which is the act of taking possession of property."  *Id.* at 390-91. It then
concluded that, where "[p]ursuant to the process of inspection and inventory, BOP officials took
temporary custody of and detained Chapa's property," and "[r]esolving, as we must, any
ambiguity in favor of sovereign immunity," the court held that "there was a detention for
purposes of 28 U.S.C. § 2680."  *Id.* at 391. The court appears to conclude that, even though
Chapa did not get one of his boxes of possessions back, it fell within the detention of goods
exception because it was taken for the purposes of temporary custody and as part of a prison
inspection and industry, rather than being taken "by virtue of execution or for a violation of the
law."  *Id.*  Although the court used the word "temporary" in describing the exception, it held that
a claim was barred by the exception where the goods were never returned.

(9ᵗʰ ed. 2009).   Plaintiff alleges that Reed took her medications and dentures, kept them in her custody, and refused to return them at least temporarily. These alleged acts constitute a "detention" within the plain meaning of the word.

*Id.* at *4, *report and recommendation adopted*, Civ. No. 11-3333, 2012 WL 5450051

(D. Minn. Nov. 7, 2012).   Edwards also cites to *Olaniyi v. District of Columbia*, 763

F. Supp. 2d 70, 89 (D.D.C. 2011), in which the court held that the impounding and

towing of a van to an FBI storage facility in conjunction with an FBI investigation and

the destruction of artwork which was in the van fell within the detention of goods

exception.  *Id.* at 89.  The court reasoned:

> At the point in time when the bomb technicians entered the van, the plaintiff and Patel were in custody, and the keys to the van were in the possession of the Capitol Police and the FBI, who were actively investigating whether the vehicle was connected to the plaintiff's presence at the Capitol Building. In the course of this investigation, the street where the van was parked was closed to pedestrian and vehicle traffic, and access to the van was limited to law enforcement officers and bomb technicians, who exercised control over the van in order to inspect it for hazards and secure the scene. In that sense, the van was in temporary custody of law enforcement officials and, therefore, under detention for purposes of 28 U.S.C. § 2680(c).

*Id.* at 89-90.

Although these cases generally interpret the detention of goods exception to **include** temporary custody, Edwards does not cite to any cases which **exclude** from the exception circumstances in which the detention was permanent.[4]   The Court finds little

---

[4] Although not cited by Edwards, the Court notes that the Ninth Circuit observed that "[c]ase law interpreting the detention of goods exception clarifies that it applies only where goods are damaged during or because of the detention," and continued to hold that "[t]he exception does not protect the government, whatever it does with a once-detained good, for the rest of that good's existence" because "[t]he plain text of the statute says the claim must relate to

(Footnote continued on next page.)

support for the proposition that the text of § 2680(c) categorically excludes detentions of goods that are ultimately permanent in nature.

In contrast, the government points to a series of cases which it claims support the conclusion that the detention of goods exception applies even where an owner is permanently deprived of goods. *See, e.g., Formula One Motors, Ltd. v. United States*, 777 F.2d 822, 823-24 (2d Cir. 1985) (applying exception to automobile that was destroyed after having been subject to a search warrant, given that it was seized as part of an investigation and relying on *Kosak* to conclude that such circumstances fell within the exception even though it was destroyed while in custody); *Farmer v. Jacobsen*, Civ. No. 97-2562, 1998 WL 957237 (D. Minn. Nov. 30, 1998) (allegations that prison discharge staff stole prisoner's personal property when transferring prison sites were barred because they arose "in respect of" a detention because they were for the purposes of inventory); *Parmelee v. Carlson*, 77 F.3d 486 (8th Cir. 1996) (unpublished table opinion) (FMC Rochester's allegedly negligent disposal of prisoner's envelopes and stamps was "detention" even though government had lost the property); *Cheney v. United States*, 972 F.2d 247, 248 (8th Cir. 1992) (where federal drug task force seized safe

_____
(Footnote continued.)

the detention, not to any activity that happened to involve a once-detained item." *Cervantes v. United States*, 330 F.3d 1186, 1189 (9th Cir. 2003) (distinguishing between activities "associated with the detention" and "independent activities subsequent to it" and finding that law enforcement's sale of a vehicle to petitioner without removing 119 pounds of marijuana hidden in the car, for which petitioner was later incarcerated, did not fall within the exception). But that case dealt with a unique situation – law enforcement inadvertently leaving marijuana in a car that was subsequently sold to a civilian – and does not directly support Edwards' position here – that "detention of goods" does not cover goods that were taken in the course of an investigation or law enforcement inquiry, but never returned.

deposit box as part of search of petitioner's home, which included a title certificate to a car, and officer returned the certificate to housemate who subsequently retrieved the car from storage and totaled the car, claim fell within "detention of goods" exception because his "claim is based on the agent's action in returning the title certificate to [the housemate], which resulted from the original detention of the certificate," claim for the car fell within detention of goods exception).

Although these cases indicate that permanent takings of goods can fall within the exception, they do suggest a limit to the exception, which is relevant here.  They do not indicate that a permanent taking of property for **any reason** is a "detention of goods," but rather, that when goods are detained by law enforcement officers – typically in the context of an ongoing search or investigation – they fall within the "detention of goods" exception even if they are never returned.  The Court thus discerns that case law instructs that whether a taking of goods amounts to a "detention of goods" under 28 U.S.C. § 2680(c) depends on the **circumstances surrounding the taking**, rather than the temporary or permanent nature of the taking of goods.  The Court concludes that the "detention of goods" in 28 U.S.C. § 2680(c) excludes from the immunity waiver circumstances in which a person's property is taken as part of an investigation or some other law enforcement conduct in which property is detained for law enforcement purposes, even if the property is never returned.  *Cf. Davila v. United States*, 713 F.3d 248, 256 (5th Cir. 2013) (holding that seizures are immune where they arise out of activity that would be covered, such as an ongoing search, but not where detention occurs after search has ended and observing that "intentional torts committed by law enforcement

officers are exempt from FTCA suits when such torts were committed during circumstances that would warrant a detention-of-goods exception").

### B.    Applied Here

The Court proceeds to apply this guidance here – that the detention of goods exception exempts from the waiver of sovereign immunity regardless of whether the goods are ultimately returned or returned in the original condition, so long as they are taken as part of a detention, investigation or some other law enforcement conduct.

### 1.    Jewelry

Edwards alleges that on January 31, 2011, she was detained by ICE and BCP officers upon her arrival and that the officers "separated Ms. Edwards from her possessions at the time of her detention."   (Compl. ¶¶ 8-9.)   On the basis of these allegations the Court concludes that the taking of her jewelry was "associated with the detention."   *Cervantes v. United States*, 330 F.3d 1186, 1189 (9th Cir. 2003).   Edwards' allegations surrounding the taking of her jewelry are sparse, and offer no indication of any other facts that would permit the Court to conclude otherwise.   Given that the United States' waiver of immunity under the FTCA is to be strictly construed, *see Rutten v. United States*, 299 F.3d 993, 995 (8th Cir. 2002), the Court concludes that Edwards' claim for the taking of her jewelry is barred by the detention of goods exception to the FTCA under 28 U.S.C. § 2680(c).

### 2.      Money

Edwards alleges that on February 8, 2011 – nine days after her arrival and initial detention by ICE and CBP – an ICE officer escorted her to a bank at the airport and instructed Edwards to withdraw $1,200 in cash using her bank card for the purposes of purchasing a ticket for her to be removed from the United States.  (Compl. ¶¶ 11-13.) She alleges that, when the ticket counter agent informed the officer that a ticket was not required, the officer nevertheless retained the money she had withdrawn and it has since not been returned to her.  (*Id.* ¶¶ 15-17, 23-24.)  The government argues that this, too, falls within the detention of goods exception because the events on February 8, 2011 are encompassed in the overarching context of an immigration detention.  There are not facts alleged or otherwise before the Court upon which the Court could reasonably come to a conclusion about whether a trip to the airport nine days following arrival and initial detention are part of an ongoing detention or investigation for the purposes of the detention of goods exception.  So, in light of the Court's duty to construe the government's waiver of sovereign immunity narrowly, the Court assumes that Edwards' trip to the airport on January 8, 2011 was generally part of an ongoing detention or investigation for immigration purposes.

But even if those events were generally part of what could be considered a detention or investigation, the Court concludes that requiring Edwards to withdraw money from a bank using a bank card and then taking that money cannot properly be considered part of her "detention."  Cases addressing the detention of goods exception typically involve the taking of goods that were **physically present** on the person upon the

person's detention, not the taking of goods that were **not on the person**, but which the person had the ability to access electronically or through some other means. *See Kurinsky*, 33 F.3d at 595 (alleging officers seized cable signal descramblers, cable television converters, assorted hardware, personal computers, numerous documents, and two handguns  from plaintiff's place of business pursuant to search warrant); *Cheney*, 972 F.2d at 248 (alleging federal agent seized car title from safe deposit box following a search plaintiff's home); *Parmelee*, 77 F.3d 486 (alleging that defendant negligently disposed of an envelope containing a gold necklace and six other stamped but unaddressed envelopes in the course of conducting an inventory of plaintiff's property).

This distinction is significant, as the Supreme Court recently observed when it determined that warrantless searches incident to arrests could not extend to the contents of a person's cell phone. *See Riley v. California*, 134 S. Ct. 2473 (2014).  The Supreme Court observed that, when determining whether a search could be performed without a warrant, courts balance two interests: "the degree to which it intrudes upon an individual's privacy and . . . the degree to which it is needed for the promotion of legitimate governmental interests." *Id.* at 2484.[5]  After concluding that searching cell phone content was not necessary for the interests the government asserted before the Court, the Court turned to the extent to which such a search intrudes on a person's reasonable expectation of privacy. *Id.* at 2485-91.  In analyzing the intrusion upon a

---

[5] The Court acknowledges that the purposes underlying detention in the immigration context may differ from these, and possibly be more expansive.  But the Court cannot conceive of, and the government has not presented, a purpose of immigration detention which would justify seizing property not physically on the detainee, but which is accessible because of some other item or mechanism on the person.

person's privacy, the Court emphasized the distinction between searches of physical objects found on a person, and the digital data that could be accessed through a person's phone:

> The United States asserts that a search of all data stored on a cell phone is "materially indistinguishable" from searches of these sorts of physical items. That is like saying a ride on horseback is materially indistinguishable from a flight to the moon. Both are ways of getting from point A to point B, but little else justifies lumping them together. Modern cell phones, as a category, implicate privacy concerns far beyond those implicated by the search of a cigarette pack, a wallet, or a purse.

*Id.* at 2488-89. Even the government there conceded that "the search incident to arrest exception may not be stretched to cover a search of files accessed remotely – that is, a search of files stored in the cloud." *Id.* at 2491. The Court observed that "[s]uch a search would be like finding a key in a suspect's pocket and arguing that it allowed law enforcement to unlock and search a house." *Id.*

This analogy is apt here, where, according to Edwards' allegations, the ICE officer seized her money – not money that was physically present on her person, but money that she had access to through her bank card. In light of the Supreme Court's reasoning in *Riley* in the context of searches incident to arrests, proactively searching or seizing goods, money, or information that is not physically present on a person but that a person **could** access through something on their person (a bank card, phone, computer, or personal knowledge of passwords or pin numbers), does not seem to reasonably be considered to "aris[e] from [a] detention." *Cervantes*, 330 F.3d at 1189 ("The text of the exception is limited to claims arising from the detention, not independent activities subsequent to it; and the purpose of the exception is to immunize government activities associated with the

detention, again, not independent activities subsequent to it."). The Court therefore concludes that, as alleged, the seizure of the cash Edwards was requested to withdraw from her bank account does not fall within the detention of goods exception to the FTCA, and the Court will thus deny the government's motion to dismiss with regard to this aspect of her conversion claim.

## IV.    NEGLIGENCE

Edwards also brings a claim against the United States for negligence based on the alleged taking of her jewelry and cash. The government argues that this claim is not cognizable under the FTCA for three reasons: first, because she failed to bring a claim for negligence in her administrative claim which is an exhaustion requirement before the Court can exercise jurisdiction; second, because her claim is covered by an exception for discretionary functions; and third, because her claim, in essence, alleges supervisory liability which is not cognizable under the FTCA. Because the Court concludes that Edwards failed to exhaust a claim for negligence in her administrative claim and thus that claim is not cognizable under the FTCA, the Court does not reach the government's remaining arguments in support of dismissal.

### A.    Exhaustion

The government claims that Edwards' administrative claim under the FTCA alleged the conversion of property, cash and jewelry but did not allege negligence, and such the negligence claim is barred because she failed to bring the claim administratively before bringing it as part of this action. Edwards counters that the negligence claim

arises out of the same facts that she presented to the agency in her administrative claim as the basis of that claim, and that therefore it should not be barred for failure to exhaust.

28 U.S.C. § 2675(a) provides that "[a]n [FTCA] action shall not be instituted upon a claim against the United States . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency."  The Supreme Court has recognized that "[t]he most natural reading of [§ 2675(a)] indicates that Congress intended to require complete exhaustion of Executive remedies before invocation of the judicial process." *McNeil v. United States*, 508 U.S. 106, 112 (1993).  Thus, "[p]resentment of an administrative claim is jurisdictional and must be pleaded and proven by the FTCA claimant." *Bellecourt v. United States*, 994 F.2d 427, 430 (8th Cir. 1993).[6]

The Eighth Circuit recently observed that "[w]hile § 2675(a) bars suit unless a claim is first 'presented' to the appropriate federal agency, the FTCA does not expressly articulate in § 2671, its definitions section, what information must be included in a properly 'presented' claim." *Mader v. United States*, 654 F.3d 794, 798 (8th Cir. 2011). The court in *Mader* then looked to guidance promulgated by the Attorney General in 28 C.F.R. § 14.2(a) to define the presentment requirement, which provides:

> For purposes of the provisions of 28 U.S.C. § 2401(b), 2672, and 2675, a claim shall be deemed to have been presented when a Federal agency receives from a claimant, his duly authorized agent or legal representative, [1] an executed Standard Form 95 or other written notification of an incident, [2] accompanied by a claim for money damages in a sum certain

---

[6] Although the Seventh Circuit has held that it is not, in fact, jurisdictional, that is a nuance that is not at issue in this case. *See Glade ex rel. Lundskow v. United States*, 692 F.3d 718, 723 (7th Cir. 2012) (the FTCA's "requirement of exhausting administrative remedies is not jurisdictional").

for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident; and [3] the title or legal capacity of the person signing, and is accompanied by evidence of his authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian, or other representative.

28 C.F.R. § 14.2(a). this guidance from the Attorney General does not include any listing of specific torts or other legal bases for a claim for money, but rather only a write-up of the incident and the sum requested on account of the incident. The Seventh Circuit has held in the context of an FTCA claim that "[t]he administrative claim need not set forth a legal theory, but it must allege facts that would clue a legally trained reader to the theory's applicability." *Glade ex rel. Lundskow v. United States*, 692 F.3d 718, 722 (7th Cir. 2012) (citing *Palay v. United States*, 349 F.3d 418, 425–26 (7th Cir. 2003); *Murrey v. United States*, 73 F.3d 1448, 1452–53 (7th Cir. 1996)).

In light of the Attorney General's guidance and the persuasive reasoning from the Seventh Circuit, the Court concludes that, in order to properly exhaust a claim for the purposes of the FTCA, a plaintiff need only present in her administrative claim the facts that would enable a legally trained reader to anticipate the legal theories that could be presented on account of those allegations. This standard for FTCA exhaustion makes practical sense: one can imagine circumstances in which an agency might decide to fulfill a claim based on only the write-up of the incident, without needing to conclude **which** of the possible legal theories is the best fit. Furthermore, given that FTCA administrative claims go directly to the applicable agency rather to a designated agency for FTCA claims, it makes sense that there would not be stringent procedural requirements because each agency's handling of the claims could differ and navigating different stringent

procedural requirements depending on each agency's requirements would impose a significant and unnecessary burden on claimants.

### B.    Applied Here

Applying this standard here, however, the Court cannot conclude that Edwards' administrative claim letter "allege[s] facts that would clue a legally trained reader" that she intended to raise a claim for negligence on the basis of those facts. *Glade*, 692 F.3d at 722. The facts outlined in Edwards' administrative claim mirror the allegations in her complaint – that when she arrived at the airport she was detained, officers "separated" her jewelry from her, she was brought back to the airport nine days later and instructed to withdraw cash using her bank card which she did and turned over to the officer, and neither her jewelry nor the cash has been returned to her. (*See* Ex. to Mem. in Support of Mot. to Dismiss.)   The letter does not include facts aligning to the elements of a negligence claim, which could have indicated to a legally trained reader that she might bring such a claim. For example, there is no mention of the relevant duties, expectations, or rules for ICE or CBP officers with regard to the withdrawal of detainee's personal funds. To the extent her negligence claim is based on a theory of failure to train or supervise, there is no mention of the officers' supervision or training in her administrative claim letter. In fact, the complaint does not contain specific allegations regarding any failure by ICE to train or supervise. (*See* ¶¶ 30-31 (listing negligence allegations).) Rather, she did not frame the claim as one based on ICE's negligent failure to train and supervise its employees "and institute directives such that its employees would not steal a deportee's property in violation of law" until her memorandum in opposition to the

government's motion to dismiss, (Mem. in Opp'n to Mot. to Dismiss at 8, Mar. 31, 2014, Docket No. 22), further undermining her argument that she adequately set forth facts in her administrative claim which would have put the agency on notice of her claims.  The Court therefore concludes that Edwards has failed to exhaust her claim for negligence as required under the FTCA, and will thus grant the government's motion to dismiss with respect to that claim.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's motion to dismiss [Docket No. 11] is **GRANTED in part** and **DENIED** in part as follows:

1.      The motion is **GRANTED** with respect to Count I for conversion, to the extent the claim for conversion is based upon the alleged seizure of jewelry, and with respect to Count II for negligence.  Those claims are **DISMISSED with prejudice.**

2.      The motion is **DENIED** with respect to Count I for conversion, to the extent the claim for conversion is based upon the alleged seizure of cash.

DATED:   September 29, 2014                    _____s/ John R. Tunheim_____
at Minneapolis, Minnesota.                              JOHN R. TUNHEIM
                                                                       United States District Judge